UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JENNIFER S.,

                              Plaintiff,

               v.

KILOLO KIJAKAZI[1] Commissioner of
Social Security,

                            Defendant.
_____

**DECISION
and
ORDER**

**21-CV-6677LGF**
(**consent**)

APPEARANCES:       LAW OFFICES OF KENNETH HILLER, PLLC
                      Attorneys for Plaintiff
                      KENNETH R. HILLER, and
                      KELLY ELIZABETH LAGA-SCIANDRA, of Counsel
                      6000 North Bailey Avenue
                      Suite 1A
                      Amherst, New York  14226

                      TRINI E. ROSS
                      UNITED STATES ATTORNEY
                      Attorney for Defendant
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York  14202
                              and
                      KATHRYN L. SMITH
                      Assistant United States Attorney, of Counsel
                      100 State Street
                      Rochester, New York  14614
                              and
                      RICHARD HUGH FOX
                      Special Assistant United States Attorney, of Counsel
                      United States Attorney's Office
                      Social Security Administration
                      Office of General Counsel
                      26 Federal Plaza – Room 3904
                      New York, New York  10278

---

[1] Kilolo Kijakazi became the Commissioner of the Social Security Administration on July 9, 2021, and pursuant to Rule 25(d) of the Federal Rules of Civil Procedure is automatically substituted as the defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

and
JASON PARKERSON PECK
Special Assistant United States Attorney, of Counsel
Social Security Administration
Office of General Counsel
6401 Security Boulevard
Baltimore, Maryland  21235

## JURISDICTION

On April 6, 2023, the parties to this action, consented pursuant to 28 U.S.C. §

636(c) to proceed before the undersigned.  (Dkt. 11).  The matter is presently before the

court on motions for judgment on the pleadings filed by Plaintiff on September 2, 2022

(Dkt. No. 6), and by Defendant on January 4, 2023 (Dkt. No. 9).

## BACKGROUND

Plaintiff Jennifer S. ("Plaintiff"), brings this action under Title II of the Social

Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner

of Social Security's final decision denying Plaintiff's application ("application") filed with

the Social Security Administration ("SSA"), on September 25, 2019, for Disability

Insurance Benefits under Title II of the Act ("SSDI" or "disability benefits").  Plaintiff

alleges she became disabled on July 25, 2018, based on a back problem, knee

problem, shoulder problem, high blood pressure, hormone problems, itching, and a

nerve problem (shoulder).  AR[2] at 18, 200, 233, 244.   Plaintiff's application was denied

November 27, 2019, AR at 18, 103-14, and upon reconsideration on March 13, 2020.

AR at 116-27.  At Plaintiff's timely request, AR at 128-29, on September 22, 2020, a

---

[2] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed by Defendant on April 5, 2022 (Dkt. 5).

hearing was held by telephone before Administrative Law Judge Michael W. Devlin ("the ALJ").  AR at 33-76.  Appearing and testifying at the hearing were Plaintiff, represented by Bruce Entelisano, Esq., and vocational expert ("VE") Yaakov Taitz ("the VE").

On January 22, 2021, the ALJ issued a decision denying Plaintiff's claim ("the ALJ's decision"), AR at 15-32, which Plaintiff appealed to the Appeals Council, AR at 197-99, with Bradford D. Myler, Esq. appointed to represent Plaintiff on her administrative appeal.  AR at 102.  On September 15, 2021, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision.  AR at 1-6.  On November 8, 2021, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On September 2, 2022, Plaintiff filed a motion for judgment on the pleadings (Dkt. 6) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 6-1) ("Plaintiff's Memorandum").  On January 24, 2023, Defendant filed a motion for judgment on the pleadings (Dkt. 9) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to [Plaintiff's][3] Brief Pursuant to the Local Rule 5.5 (Dkt. 9-1) ("Defendant's Memorandum").  On March 7, 2023, Plaintiff filed Plaintiff's Response to the Commissioner's Brief in Brief [*sic*] in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 19) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED, Defendant's Motion is GRANTED and the Clerk of the Court is directed to CLOSE the file.

---

[3] Unless otherwise indicated, all bracketed material has been added.

## FACTS[4]

Plaintiff Jennifer S. ("Plaintiff"), born on May 12, 1971, was 47 years old as of July 25, 2018, her alleged disability onset date ("DOD"), and 48 years old as of September 30, 2019, Plaintiff's date last insured for purposes of obtaining SSDI benefits.  AR at 18, 20, 26, 233.  Plaintiff graduated from high school and completed two years of college, AR at 245, and lives in a house with her boyfriend who helps Plaintiff with household chores.  AR at 254.  Plaintiff can prepare meals and can do housework that does not involve kneeling or squatting.  AR at 256. 259.  Plaintiff often goes out by herself, has a driver's license, and drives, shops for groceries and other necessities, both in stores and by computer on-line, and can handle money.  *Id*. at 257.  Plaintiff socializes with her boyfriend, going out to eat and to shows a few times a month.  AR at 258.

Plaintiff has past relevant work experience as a blood specialist/laboratory assistant, and as an emergency medical technician ("EMT").  AR at 246, 266-73.  It is undisputed that Plaintiff has osteoarthritis of both knees and is status-post left shoulder rotator cuff repair, AR at 20-21, Plaintiff's Memorandum at 5-6; Defendant's Memorandum at 1-2, and that pain attributed to those conditions caused Plaintiff to stop working.  AR at 245, 261-63.  Plaintiff treats her pain with hydrocodone (narcotic analgesic), resting from physical activity, and use of a heating pad and ice.  *Id*. at 262-63.

In applying for disability benefits, Plaintiff reported she was limited by her shoulder disorder to lifting no more than 30 lbs., cannot stand, walk, sit, or ride in a

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

vehicle for long periods of time, cannot kneel or squat, was limited with reaching because of her left shoulder and some numbness in her left hand, and that descending stairs was more difficult than ascending stairs.  AR at 259-60.  Despite these physical limitations, Plaintiff remained capable of following spoken and written instructions, had no problem getting along with authority figures, and denied memory problems.  *Id*. at 261.  Plaintiff further stated it is necessary for her to "monitor myself" and "take it easy with myself."  *Id*. at 263.

As relevant to this action, Plaintiff was treated at University of Rochester Medical Center by her primary care physician Donald G. Symer, M.D. ("Dr. Symer"), AR at 504-740, 746-754, and by orthopedist John P. Goldblatt ("Dr. Goldblatt").  AR at 467-97. Plaintiff was also treated by neurologist Ashanthi Gajaweera, M.C. ("Dr. Gajaweera"), AR at 497-503, and at Finger Lakes Bone & Joint Center by orthopedic surgeon David J. Cywinski, M.D. ("Dr. Cywinski").  AR at 741-45.  On July 25, 2018, Plaintiff underwent left shoulder mini open rotator cuff and repair arthrosopic surgical procedure by orthopedic surgeon Daniel Alexander, M.D. ("Dr. Alexander").  AR at 349-53.

In connection with Plaintiff's disability benefits application, her medical records were reviewed on November 26, 2019 by State agency evaluating psychologist L. Dekeon, Ph.D. ("Dr. Dekeon"), who assessed Plaintiff with anxiety and obsessive compulsive disorder which Dr. Dekeon considered a non-severe psychological impairment based on Plaintiff's activities of daily living ("ADLs"), and that Plaintiff's neurologist in October 2019 noted normal findings and that Plaintiff denied psychiatric symptoms.  AR at 83-85.  Plaintiff's medical records were also reviewed on November 25, 2019, by State agency evaluating physician J. Koenig, M.D. ("Dr. Koenig"), who

found Plaintiff's residual functional capacity ("RFC") permitted Plaintiff to perform work of "light" exertion based on restrictions to lifting, carrying, pushing, pulling, standing, walking, and sitting.  AR at 85-88.  In connection with Plaintiff's request for an administrative hearing, Plaintiff's medical records were again reviewed on March 5 and 12, 2020, when State agency psychologist O. Fassler, Ph.D. ("Dr. Fassler"), found Plaintiff with only a non-severe psychological impairment, AR at 95-96, and State agency physician D. Bauer, M.D. ("Dr. Bauer"), found Plaintiff retained the RFC for light work.  *Id*. at 96-100.

## DISCUSSION

**1.      Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

Although Plaintiff seeks only SSDI benefits, the definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v.*

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

*Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks

and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is

on the applicant for the first four steps, with the Commissioner bearing the burden of

proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v.*

*Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because

if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases

and the claimant is not eligible for disability benefits, but if the claimant meets the

criteria for the third or fourth step, the inquiry ceases with the claimant eligible for

disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

### 3.    Analysis of Plaintiff's Arguments

In the instant case, the ALJ found Plaintiff meets the insured status requirements

for SSDI through September 30, 2019, AR at 20, and that Plaintiff has not engaged in

substantial gainful employment ("SGA"), since July 25, 2018, the alleged DOD.  *Id*.  The

ALJ found Plaintiff has the severe impairments of osteoarthritis of the bilateral knees,

status post left shoulder AC (acromioclavicular) joint repair, and obesity because these

impairments significantly limit Plaintiff's ability to do basic work activities and have

lasted or can be expected to last at least 12 months, AR at 20-21, but that there was no

evidence that Plaintiff's other impairments supported by the medical records, including

hypertension, sleep apnea, and anxiety have more than a minimal effect on Plaintiff's

ability to do basic work activities and are thus non-severe impairments, *id*. at 21-22, and

that Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpt. P,

Appx. 1.  *Id*.  The ALJ further determined Plaintiff retains the residual functional capacity

("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with

limitations including that she can occasionally lift and/or carry and push and/or pull 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk up to two hours in an eight hour day, sit about six hours in an eight hour day, occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl, occasionally/never climb ladders, ropes, or scaffolds, frequently, as opposed to constantly, look up and down and turn her head to the left and to the right, and frequently reach, handle and finger with the non-dominant left upper extremity, AR at 22-25, and that such restrictions would prevent Plaintiff from performing her past relevant work ("PRW"), as a laboratory assistant and EMT.  AR at 25-26.  The ALJ further found that given Plaintiff's RFC, education, and ability to communicate in English, with transferability of skills irrelevant to the disability determination, there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing including as an information clerk, document preparer, and telemarketer.  *Id*. at 26-27.  Accordingly, the ALJ found Plaintiff not disabled as defined in the Act through September 30, 2019, the date Plaintiff was last insured for SSDI.  *Id*. at 27.

In support of her motion, Plaintiff argues that remand is warranted because in formulating Plaintiff's RFC, the ALJ, despite assessing an RFC restricting Plaintiff to a limited range of sedentary work, which is more restrictive than the RFC assessments rendered by State agency evaluators limiting Plaintiff to light work,[6] erred by failing to

---

[6] As relevant here, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  Further, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

sufficiently "tether" the "specific RFC findings" to the evidence given the absence in the medical record of medical opinion evidence or functional assessment findings. Plaintiff's Memorandum at 11-18. Defendant argues the ALJ formulated an RFC that is well-supported to the medical and other evidence in the record. Defendant's Memorandum at 4-16. In reply, Plaintiff maintains that although the RFC limits Plaintiff to sedentary work, rather than to light work as determined by the State agency review evaluators, the RFC does not "track with any medical evidence or testimony" and, thus, is not sufficiently "tethered" to the record, requiring remand. Plaintiff's Reply at 1-4. There is no merit to Plaintiff's argument.

Preliminarily, it is the ALJ, and not a medical source, who is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 404.1527(d)(2), 416.946(c), and 416.927(d)(2). Further, despite the numerous decisions rendered in this district, many of which are referenced by Plaintiff, Plaintiff's Memorandum at 12-18; Plaintiff's Reply at 2-4, granting the Plaintiff's request for remand based on the ALJ's failure to "tether" the RFC determination to a particular medical opinion, the undersigned finds such requirement is irreconcilable with the Second Circuit's repeated instruction that "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971), and *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013). Rather, "the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Id*. (quoting *Matta*, 508 Fed.Appx. at 56 (brackets in *Schillo*). *See Monroe v.*

*Comm'r of Soc. Sec.*, 676 Fed.Appx. 5, 9 (2d Cir. 2017) (the ALJ could rely on voluminous treatment notes that provided medical assessments of Plaintiff's characteristics relevant to her ability to work, as well as her activities of daily living, to formulate the RFC without the benefit of a medical opinion where the record contained sufficient evidence from which an ALJ could assess the claimant's RFC). The ALJ is permitted to formulate the RFC without regard to any particular medical opinion provided the record as a whole contains sufficient evidence from which the claimant's RFC can be determined. *See Cook v. Comm'r of Soc. Sec.,* 818 Fed.Appx. 108, 109-10 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.'" (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. 2013)). Nor is an ALJ required to perform an explicit function-by-function analysis before determining a claimant's RFC. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). As such, so long as the evidence in the administrative record, including diagnostic evidence, MRI results, X-ray results, and treatment notes support the ALJ's RFC determination, it cannot be said that "no reasonable factfinder could have reached the same conclusion," so as to uphold an RFC assessment upon judicial review. *Schillo*, 31 F.4th at 78 (citing *Brault*, 683 F.3d at 448). *See also Cook,* 818 Fed.Appx. at 109 -10 ("Here, the treatment notes were in line with the ALJ's RFC determinations."); *Corbiere v. Berryhill*, 760 Fed.Appx. 54, 56 (2d Cir. 2019) (affirming the Commissioner's final decision despite the lack of a medical opinion expressly discussing plaintiff's physical limitations and relying on plaintiff's treatment notes to

formulate the RFC); *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed.Appx. 75, 79 (2d Cir. 2018) (the ALJ's RFC determination related to plaintiff's lifting requirement, while not directly supported by a medical opinion, was supported by an assessment from which the ALJ could infer that Plaintiff could perform the lifting requirement); *Monroe*, 676 Fed.Appx. at 8 ("Where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," a medical source statement or formal medical opinion is not necessarily required[.]") (citing *Tankisi*, 521 Fed.Appx. at 34 (where "the record contains sufficient evidence from which an ALJ can assess . . . residual functional capacity," a medical source statement or formal medical opinion is not necessarily required)).  Here, the requisite deferential review of the ALJ's decision establishes it is supported by substantial evidence in the record.

     In particular, the ALJ considered that on June 23, 2017, Plaintiff underwent right knee arthroscopy performed by Dr. Goldblatt, followed by physical therapy and corticosteroid injections to which Plaintiff developed a rash.  AR at 23 (citing AR at 479).  At an examination on March 26, 2019, Plaintiff was diagnosed with right knee patellofemoral arthritis, for which Dr. Cywinski recommended diagnostic therapeutic arthroscopy but Plaintiff did not want any treatment at that time.  AR at 24 (citing AR at 744).  On July 22, 2020, Plaintiff complained of pain and joint stiffness with joint crepitus and swelling in her knees.  AR at 24 (citing AR at 747).  Upon examination by Dr. Symer, Plaintiff had not effusion or synovitis in her knees, no lower extremity edema, and Plaintiff walked without an assistive device.  AR at 24 (citing AR at 747, 751).  Dr. Symer diagnosed bilateral osteoarthritis of both knees and osteoarthritis of the patellofemoral joints of both knees, and referred Plaintiff for evaluation of possible

inflammatory arthritis, recommending over-the-counter non-steroidal anti-inflammatory drugs Advil or Tylenol, in addition to low-impact exercise or pool exercises.  *Id*.

Nor is there any merit to Plaintiff's novel argument that the ALJ misconstrued evidence of the severity of Plaintiff's bilateral knee osteoarthritis by "alluding to Plaintiff not pursuing surgery" because of Plaintiff's "young age" as indicative of a lesser degree of severity, instead of considering Plaintiff's age as "the impairing factor on her ability to pursue knee replacement."  Plaintiff's Memorandum at 12 (referencing AR at 570, 653).  Rather, a plain reading of the referenced portions of the administrative record establishes that on September 24, 2019, Plaintiff was advised by Dr. Symer that she "will need joint replacement surgery but she's trying to delay this."  AR at 570.  On November 6, 2019, Dr. Symer reported that Plaintiff "understands she may need knee replacement surgery, but she is young and is trying to postpone this as long as possible."  *Id*. at 653.  Contrary to Plaintiff's characterization of these two statements as establishing Plaintiff's relatively young age was preventing Plaintiff from undergoing knee replacement surgery, both statements imply that it is likely Plaintiff will need knee replacement surgery, but not necessarily at this time, and that the decision to delay the surgery was Plaintiff's, which is consistent with the ALJ's determination, AR at 24, that Plaintiff's bilateral knee osteoarthritis decreased Plaintiff's ability to work, but not to the point that Plaintiff is unable to work.

With regard to Plaintiff's left shoulder impairment, the ALJ considered that on July 25, 2018, Plaintiff's asserted DOD, Plaintiff underwent left shoulder mini open rotator cuff and repair arthrosopy by Dr. Alexander following a history of gradually progressing left shoulder pain and limited range of motion ("ROM").  AR at 23 (citing AR

at 332, 353, 742).  On January 11, 2019, an examination of Plaintiff's left shoulder

showed a well-healed surgical scar, and Plaintiff had full ROM, full strength (5/5), and

was "non-tender to palpation about the left shoulder globally."  AR at 332.  Although

Plaintiff had some increased pain following a motor vehicle accident in March 2019, AR

at 24 (citing AR at 544), Plaintiff testified at the administrative hearing that she was

"okay" after the accident, and examination on March 14, 2019, revealed "full active

range of motion in forward elevation and abduction," full strength, negative impingement

test, and "good posterior internal rotation.  *Id*. (citing AR at 742).   The ALJ also

considered that Plaintiff was referred for physical therapy for her left shoulder several

times, attending a few sessions in October and November 2018 before being

discharged in December 2018 for failing to attend further appointments or to schedule

further appointments, AR at 23-24 (citing AR at 332, 452-453).  The ALJ observed that

at the time of her discharge, Plaintiff was assessed with left shoulder ROM that was

within normal limits and good strength.  AR 24 (citing AR at 452).

The ALJ further considered that when Plaintiff complained of left arm numbness

and tingling, she attended a neurological consultation on October 17, 2019.  AR at 24

(citing AR at 501).  Examination by neurologist Dr. Gajaweera revealed full strength and

intact reflexes in her bilateral upper extremities, limited left lateral rotation and flexion of

her neck with scapular pain and paresthesias (tingling or "pins and needles" sensation)

to the upper extremity, and nerve conduction studies reveal electrophysiologic evidence

of a mild left C5 radiculopathy.  *Id*. (citing AR at 502-03).  A few chiropractic treatment

sessions were effective and Plaintiff steadily improved.  *Id*. (citing AR at 439-40).

Although Plaintiff still had some tingling in her left pointer finger, she had no arm

weakness or significant back pain, *id*. (citing AR at 653), and as of July 22, 2020,

Plaintiff reported left arm numbness "only now and then."  *Id*. (citing AR at 747).

Significantly, the ALJ considered that Plaintiff, in response to the ALJ's

questioning at the administrative hearing as to why Plaintiff maintains she cannot work,

testified that, "I can work, I just need help because my conditions are getting worse."

AR at 23 (citing AR at 45).  This is consistent with other evidence in the record, of which

the ALJ remarked, that Plaintiff, despite her impairments, remains capable of activities

of daily living that are inconsistent with Plaintiff's claimed disability from working.  AR at

25.  In particular, the ALJ considered that Plaintiff can prepare simple meals, bathe, and

groom, perform household chores, shop, and drive which demonstrates Plaintiff's ability

to use hand and foot controls and to sit for continuous periods of time, bend and stoop

to enter and exit a vehicle, and turn her head to check for traffic when changing lanes

and backing up.  AR at 25 (citing AR at 254-63).  The ALJ also considered that

Plaintiff's treatment for her various impairments was largely conservative, yet helpful,

AR at 25, that her pain medication worked, Plaintiff declined diagnostic or therapeutic

arthroscopy on her right knee, and her left should surgery was successful with follow-up

examinations by her treatment providers largely unremarkable.  AR at 25 (citing AR at

742-45).

Under the court's "very deferential standard of review," *Brault*, 683 F.3d at 448,

the plethora of evidence in the administrative record cited by the ALJ, including

diagnostic evidence, MRI results, X-ray results, and treatment notes, as well as

Plaintiff's hearing testimony that she is able to work, establishes "that no reasonable

factfinder could [not] have reached the same conclusion," *i.e.*, that the ALJ's RFC

assessment that Plaintiff, despite her impairments, remained capable of performing sedentary work.  *Schillo*, 31 F.4th at 78.

Moreover, it simply strains credulity that an ALJ's assessment of an RFC that was *more* limiting than that reached by the State agency review physicians was erroneous and requires remand as Plaintiff requests.  *See Ramsey v. Commissioner of Social Security*, 830 Fed.Appx. 37, 39 (2d Cir. 2020) (finding the ALJ committed no error by deviating from the consultative examiners' recommendation that *decreased* the claimant's RFC based on other evidence in the record).  *See also Zabala v. Astrue*, 595 F.3d 401, 410 (2d Cir. 2010) (even if the court's review reveals an error by the ALJ, remand is not necessary where, despite the ALJ's error, there is no reasonable likelihood that it would affect the disability determination) (internal citations and quotations omitted); *Smith v. Comm'r of Soc. Sec.*, 2020 WL 4333340, at *3 n. 2 (W.D.N.Y. Jul. 28, 2020) ("Plaintiff also appears to take issue with how the ALJ evaluated the opinion of the non-examining state agency consultant, but precisely what fault Plaintiff finds is not clear.  As far as the Court can tell, it appears that the ALJ found Plaintiff to be more limited than the state agency consultant."); *Barone v. Comm'r of Soc. Sec.*, 2020 WL 3989350, at *4 (W.D.N.Y. July 15, 2020) ("[w]here an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand") (internal citations omitted) (italics in original); *Wynn v. Comm'r of Soc. Sec.*, 342 F.Supp.3d 340, 347-48 (W.D.N.Y. 2018) (finding the ALJ properly assigned "little weight" to the opinions of consultative medical sources that "included fewer mental and physical work-related limitations" than the ALJ included in the RFC assessment).  Significantly, Plaintiff offers no argument explaining how a

determination that, based on an RFC assessment lower than that supported by the medical evidence in the record, there were fewer jobs in the national economy the Plaintiff could perform is in anyway prejudicial to Plaintiff's claim.

Accordingly, the ALJ's decision was supported by substantial evidence in the record, requiring Plaintiff's Motion be DENIED and Defendant's Motion be GRANTED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 6) is DENIED; Defendant's Motion is GRANTED; the Clerk of Court is directed to CLOSE the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      August 10, 2023
                 Buffalo, New York